UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED N. DERUSHA,

        Plaintiff,

                                       CASE NO. 02-CV-73030-DT
   v.                               JUDGE DENISE PAGE HOOD
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

DETROIT JEWISH NEWS
AND STYLE MAGAZINE and
ARTHUR HORWITZ,

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION FOR ATTORNEY FEES
(Doc. Ent. 19)**

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    The Court should require plaintiff to reimburse defendants for costs in the amount of $1,420.60
           pursuant to Fed. R. Civ. P. 54(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.    This Court may award attorney fees under 42 U.S.C. § 2000e-5(k). . . . . . . . . . . . . . . . . . . . 11
     D.    The Court should conclude that, under 54(d)(2)(B), defendants' motion is untimely as to attorney
           fees attributable to the trial court but timely as to attorney fees attributable to the appeal process.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     E.    The Court should deny defendants' motion for an award of appellate attorney fees pursuant to Fed.
           R. Civ. P. 54(d)(2)(B) and 42 U.S.C. § 2000e-5(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     F.    This Court does not have jurisdiction to award Fed. R. App. P. 38 appellate attorney fees. . . . . 24
     G.    The Court should deny plaintiff's request for fees related to the response to the instant motion.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

**I.      RECOMMENDATION:**  The Court should deny defendants' motion for attorney fees. However, the Court should direct require plaintiff to reimburse defendants for costs in the amount of $1,420.60.

**II.     REPORT:**

**A.      Procedural History**

**1.**      Plaintiff was employed by defendants on February 22, 2000 as the Associate Publisher of the Jewish News and Publisher of Style Magazine.  Compl. ¶¶ 5, 14, 15.  On or about November 13, 2001, plaintiff signed an affidavit which stated, in pertinent part:  "Arthur Horwitz has never indicated to me in any way that I need to or should hire people based upon their being Jewish, or that I should try to find a Jewish candidate for any position[,]" and "I am unaware of any policy or practice at the Jewish News giving preference to Jewish employees or candidates." Doc. Ent. 19-5 ¶¶ 7, 20.  It also stated:  "Mr. Flees' suggestion that non-Jewish employees are put through more rigorous hiring procedures than Jewish employees, such as requiring the non-Jewish candidate to take a typing or spelling test, is untrue."  Doc. Ent. 19-5 at 2 ¶ 11.  According to plaintiff, he was "intimidated into signing an Affidavit that was premised on the false conclusions that Plaintiff alone had terminated the former employee for a legitimate business reason.  In fact the decision and rationale behind the termination was the creation of the news' owner and Publisher, Arthur Horwitz."  Doc. Ent. 20-1 at 9.

**2.**      Plaintiff was terminated from his employment on November 28, 2001.  Compl. ¶¶ 6, 36. On July 24, 2002, plaintiff filed this complaint against defendants Jewish News and Arthur Horwitz.  (Doc. Ent. 1).  Plaintiff alleged religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.  As to his retaliation claim, plaintiff alleged: "The

2

conduct related above exhibits Defendants' retaliation against [p]laintiff for his hiring of a 'troublesome' non-Jewish employee and his strong reluctance to support [d]efendants as they defended a charge of religious discrimination, and later retaliation, brought by this non-Jewish employee."  Compl. ¶ 51.

3.      Plaintiff was first deposed on October 3, 2002, and his deposition concluded on January 14, 2003.  (Doc. Ent. 19-1 at 10, Doc. Ent. 19-3, Doc. Ent. 19-4).  At his October 3, 2002 deposition, plaintiff testified that Horwitz knew plaintiff was a Jehovah Witness before plaintiff began to get paid.  Doc. Ent. 19-3 at 54-55.  When asked, "[d]id Arthur tell you that you should hire somebody Jewish for that position?", plaintiff responded: "Our discussions were that it is a plus but not – but not a have-to situation.  It's a plus to be Jewish."  Doc. Ent. 20-2 at 110. Plaintiff also testified as follows:

> A:      You know, but I do recall on that day, Friday after I got – after I had this, and what I viewed as a mysterious call, "come to my office tonight before five," and I had been out so I did not have a chance of getting there. They were in the process of moving to another office.  Something did not seem right about it to me, and so I had an attorney friend I was meeting that evening, and asked her what should I do?  I don't understand why I have to do this all of a sudden, sign this document.
> And I responded to that, based on the language she told me to.
> And I sent it back to David's [Gunsberg's] office.
> . . .
> A:      I was quite nervous about signing this affidavit, because I did not understand, since I was an employee at the Jewish News, why an affidavit would need to be signed by me since I was gainfully employed?
> At the time this [the affidavit] was faxed to me, I got the feeling that maybe I was not going to be gainfully employed.
> . . .
> Q:      You said to me earlier that when you received the affidavit, it occurred to you that perhaps you weren't going to be with the company much longer, is that correct?
> A:      I stated that to that attorney friend of mine.
> Q:      Do you know when the decision to terminate you was made?

A:      No, I do not.

Doc. Ent. 19-3 at 4 (141-142, 149-151). Plaintiff also stated that he did not discuss the affidavit

with Horwitz. Doc. Ent. 19-3 at 4 (150-151). Plaintiff was asked "[w]hat evidence do you have

that retaliation was the motive for your termination?" Doc. Ent. 20-2 at 249-250. Plaintiff

answered:

> Well, I think it's clear since I had no disciplinary notes sent to me, and I was
> performing a job that was for the Circulation department and the Ad Department
> without those managers working there anymore, that I had more responsibility, I
> had more duties than any of the other directors in that organization, and I felt that
> to do the affidavit, being signed, and a week goes by, or two, later, whatever the
> time frame is, and I'm dismissed, I feel that I have been retaliated against.

Doc. Ent. 20-2 at 250.

The transcript of plaintiff's January 14, 2003 deposition states, in pertinent part:

> Q:    Did you ever hear Arthur Horwitz made any comment which you believed
> to be racially discriminatory before you were terminated? I'm sorry,
> religiously discriminatory before you were terminated?
> A:    Did I hear him make --
> Q:    Any discriminatory –
> A:    –a religious slur or –
> Q:    Correct.
> A:    No.
>      . . .
> Q:    You never complained about religious discrimination while you were still
> at the paper, did you?
> A:    No.

Doc. Ent. 19-4 at 2, 3 (241, 245).

Defendant Horwitz was deposed on May 14, 2003. (Doc. Ent. 20-3 at 1). In pertinent

part, the transcript states:

> Q:    At the time that you sent the letter to your Counsel, isn't it correct that you
> were attempting to obtain a signature from Mr. DeRusha on an affidavit
> with regard to Barry Flees's accusations of discrimination against the
> Jewish News?

4

. . .

Q:    Is that why you didn't give Mr. DeRusha the letter that in effect said, "You're done here on October 17th," is because you were waiting for his signature?

A:    To a certain degree, yes.

Q:    Any other reasons you had as to why Mr. DeRusha is not released on October 17th other than the fact that he hasn't signed this affidavit?

A:    No, that's the only reason.

Doc. Ent. 20-3 at 1 (34-35).

**4.** On November 3, 2003, defendants filed a motion for summary judgment. (Doc. Ent. 8). Defendants argued that (I) "[p]laintiff [had] failed to set forth a cause of action against the individual defendant, Arthur Horwitz, for violation of the Civil Rights Act of 1964[;]" (II) "[p]laintiff's claim of religious discrimination must be dismissed[;]" and (III) "[p]laintiff's claim of retaliation must be dismissed."

In response to this motion, plaintiff voluntarily dismissed his Title VII claims against defendant Horwitz. However, he argued that he could establish his religious discrimination and retaliation claims as to defendant paper. Doc. Ent. 10 at 2. In reply, defendant argued that the religious discrimination and retaliation claims should be dismissed. Doc. Ent. 11.

**5.** On February 26, 2004, Judge Woods entered an order granting defendants' motion for summary judgment. (Doc. Ent. 12; Doc. Ent. 19-6). As to religious discrimination, Judge Woods concluded that summary judgment was appropriate. Doc. Ent. 12 at 9-14. Specifically, he stated: "DeRusha has provided no case law that permits him to establish a prima facie case by relying upon how his employer allegedly treated employees who were admittedly dissimilar to DeRusha. Accordingly, this Court finds that DeRusha has failed to establish the final element

5

[dissimilar treatment of a similarly situated, non-protected person[1]] of his prima facie case of

religious discrimination." Doc. Ent. 12 at 11-12. Taking issue with plaintiff's failure to address

defendants' claim regarding plaintiff's inability to meet the 2001 budget and his management

skills, Judge Woods also stated that plaintiff had "failed to produce evidence suggesting either

directly or by inference that [d]efendants' stated reason for his discharge was pretextual." Doc.

Ent. 12 at 12-13. Judge Woods further stated that "based on the undisputed evidence,

Defendants are entitled to the same actor inference."[2] Doc. Ent. 12 at 13-14.

As to retaliation, Judge Woods found that there was conflicting testimony with regard to

whether plaintiff was pressured to sign the affidavit. Doc. Ent. 12 at 15-16, 19. However, with

respect to defendants' alternative argument that plaintiff was not penalized in conjunction with

the Title VII matter concerning Flees, Judge Woods stated that plaintiff had failed to "submit

case law to support his contention" that "he was penalized in contravention of Title VII." Doc.

Ent. 12 at 16-17. The Court was "troubled by the fact that DeRusha [was] seeking protection for

signing an affidavit, under oath, that he now contends to be less than truthful[,]" and stated:

"this Court cannot believe that Congress intended either the participation or opposition clause

[42 U.S.C. § 2000e-3(a)] to protect the signing of an allegedly false affidavit." Doc. Ent. 12 at

17. Judge Woods also found that plaintiff did not "offer any record support for his contention

that his 'open reluctance to sign the affidavit' [was] sufficient to establish the requisite

---

[1]*See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("a plaintiff can also
make out a prima facie case by showing, in addition to the first three elements, that 'a
comparable non-protected person was treated better'.").

[2]"[T]he 'same actor' inference . . . allows one to infer a lack of discrimination from the
fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite
Transp. Co.*, 61 F.3d 461 (6th Cir. 1995).

knowledge to assert a Title VII retaliation claim[,]" and did not submit evidence 'to refute Horwitz's testimony that he was not aware of DeRusha's questions, concerns, or the [November 3, 2001] memo sent to Gunsberg's assistant." Doc. Ent. 12 at 17-18. As the Court stated: "[i]t is uncontroverted that Horwitz, not Gunsberg, made the decision to terminate DeRusha. Therefore, the Court finds that DeRusha has not demonstrated the requisite knowledge on [d]efendants' part to establish a retaliation claim under Title VII." Doc. Ent. 12 at 18. With regard to plaintiff's claim that "the timing pertinent to the retaliation claim is the time between the pressure he experienced to sign the Flees affidavit in early November and his termination two weeks after he signed the affidavit[,]" the Court found plaintiff's evidence "insufficient[.]" Doc. Ent. 12 at 19. The Court also noted: "DeRusha has offered no evidence to refute [d]efendants' contention that the late September/early October decision to discharge DeRusha . . . was made well before DeRusha received the November 1st fax from Gunsberg containing the draft affidavit for DeRusha's signature." Doc. Ent. 12 at 19. Judge Woods concluded that plaintiff could not "establish a causal connection between the request to prepare and sign an affidavit in the Flees' EEOC investigation and DeRusha's termination." Doc. Ent. 12 at 19-20. Judgment in favor of defendants and against plaintiff was entered. (Doc. Ent. 13).

**6.**      On March 25, 2004, plaintiff filed a notice of appeal. (Doc. Ent. 14). Plaintiff argued that "the district court should not have granted Defendants summary judgment due to the lack of a similarly situated employee treated better than him[;]" and that "his open reluctance to sign an affidavit for Flees' E.E.O.C. investigation on behalf of his employer constitute[d] protected activity." Doc. Ent. 17 at 5, 6.

On May 25, 2005, the Sixth Circuit affirmed the district court's judgment. Case No. 04-

1408, *DeRusha v. Detroit Jewish News and Style Magazine & Arthur Horwitz*. *See also* Doc.

Ent. 17; Doc. Ent. 19-7. As to the first of plaintiff's arguments, the Court noted that "[p]laintiff .

. .offers scant evidence of th[e] comparison [between plaintiff and the Jewish manager of the

News' sister paper in Atlanta]." Doc. Ent. 17 at 5. As to the second argument, the Sixth Circuit

considered dubious plaintiff's claim that he engaged in protected activity, because "[p]laintiff

signed an affidavit on behalf of the News, not on behalf of Flees; thus, Plaintiff did not engage in

conduct adverse to his employer." Doc. Ent. 17 at 6.

On June 17, 2005, the Sixth Circuit's mandate issued, with no costs taxed.

**7.**      On June 8, 2005, defendants filed a bill of costs seeking taxation of costs in the amount

of $1,794.80: deposition costs of $1,475.60, witness fees of $89.95 and copying fees of $229.25.

(Doc. Ent. 18).

Defendants also filed a motion for an award of attorney fees in the amount of $54,234.20.

(Doc. Ent. 19). According to defendants:

> . . . Plaintiff continued to pursue this matter long after it was clear that his claims
> were without merit. Plaintiff's own admissions made it clear that he could not
> prove retaliation - he knew before he ever filed this lawsuit that the decision to
> terminate him was made before he objected to signing an affidavit. In fact, it was
> because he thought he was going to be terminated that he made the objection. In
> addition, before this lawsuit was ever filed Plaintiff signed an affidavit under oath
> acknowledging that he was not aware of any religious discrimination.

Doc. Ent. 19-1 at 14-15. Furthermore, defendants state that, on appeal, "Plaintiff attempted to

raise arguments that had never been raised before, such as arguing that the Publisher of the

Atlanta Jewish Times was comparable to him." Defendants contend that "[p]laintiff's conduct of

insisting to pursue this matter cannot be condoned." Doc. Ent. 19-1 at 15. Attached to

defendants' motion is an itemization of attorney fees for dates ranging from August 9, 2002 (the

8

date of a phone conference regarding an answer to the complaint) to April 21, 2005 (the date of

oral argument in the 6th Circuit), as well as an affidavit in support of defendants' attorney fees.

Doc. Entries 19-8, 19-9.

On June 22, 2005, plaintiff filed a response to defendants' bill of costs and defendants'

motion for attorney fees. (Doc. Ent. 20). Plaintiff contends that "[i]t is imperative to note that

nearly every allegation contained in this case was highly disputed[,]" and "[p]laintiff did have

evidence to support his claims and set forth a prima facie case of religious discrimination and

retaliation." Doc. Ent. 20-1 at 8. Plaintiff requests that the Court deny the bill of costs, deny the

motion for attorney fees and award plaintiff fees pursuant to Fed. R. Civ. P. 54(d) related to his

response to defendants' motion. Doc. Ent. 20-1 at 14.

On June 24, 2005, defendants filed an amended bill of costs totaling $1,794.80. (Doc.

Ent. 22). On July 5, 2005, costs in the amount of $1,420.60 for court reporter fees were taxed

against plaintiff. (Doc. Ent. 23). This amount consists of $647.20 for the October 3, 2002

deposition of plaintiff; $615.40 for the January 14, 2003 deposition of plaintiff; and $158 for the

May 14, 2003 deposition of defendant Horowitz. Doc. Ent. 22-2 at 2-4.

**8.**     On December 8, 2006, I held a hearing regarding defendants' motion for attorney fees.

Plaintiff was represented by attorney Leah M. Roush-DeFrank. Defendants were represented by

attorney Chandra W. Baker. Following oral argument, I took the motion under advisement.[3]

**B.     The Court should require plaintiff to reimburse defendants for costs in the amount
of $1,420.60 pursuant to Fed. R. Civ. P. 54(d)(1).**

---

[3]On October 24, 2006, Judge Hood referred the motion for attorney fees to me for hearing
and determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. Ent. 27). However, I conclude
that my authority on a motion to tax costs is limited to issuing a report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B). *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir. 1993).

9

Defendants' motion requests only an award of attorney fees.  Doc. Ent. 19-1 at 1, 3.
However, the motion acknowledges defendants' filing of a bill of costs,[4] and, during the
December 8, 2006 oral argument, defense counsel stated that defendants have a right to receive
costs.

The local rules of this Court provide that "[c]osts will be taxed by the Clerk as provided
in the Bill of Costs Handbook available from the Clerk's Office."  E. D. Mich. LR 54.1.
Defendants filed an amended bill of costs on June 24, 2005.  As previously noted, on July 5,
2005, costs in the amount of $1,420.60 for court reporter fees were taxed against plaintiff.  (Doc.
Ent. 23).

Construing plaintiff's June 22, 2005 filing as a motion for the Court to review the clerk's
action, plaintiff should be required to reimburse defendants for $1,420.60 of taxed costs.  First,
the motion was premature under Fed. R. Civ. P. 54(d)(1), which provides in relevant part:  "On
motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."
Plaintiff's June 22, 2005 filing predates the July 5, 2005 taxation of costs.  Second, to the extent
the June 22, 2005 filing was meant to object to the original (June 8, 2005) bill of costs, it does
not specifically address the costs sought by defendant's July 5, 2005 filing.  Although the filing
is titled, "plaintiff's response to defendants' bill of costs and defendants' motion for attorney
fees[,]" states that "[p]laintiff opposes [d]efendants' Bill of Costs pursuant to Fed. R. Civ. P.
54(d) and App. Pro. R. 39," and requests that the Court "deny [d]efendants' Bill of Costs[,]" the
issue presented by the motion is "[w]hether [d]efendants should be awarded attorney fees as the
prevailing party?"  Doc. Ent. 20-1 at 1, 2, 5, 14.  This issue is consistent with the content of the

---

[4]Doc. Ent. 19-1 ¶ 5.

10

argument within plaintiff's response.  Doc. Ent. 20-1 at 11-14.  For example, it generally states

that "the strong policy considerations favoring an award of costs and attorneys' fees to a

victorious plaintiff in a Title VII action do not apply in favor of a victorious defendant[.]" Doc.

Ent. 20-1 at 12.  The filing does request that the Court deny the bill of costs, Doc. Ent. 20-1 at

14; however, it does not specifically contest the deposition costs, witness fees or copying fees

sought in the June 8, 2005 bill of costs.

**C.      This Court may award attorney fees under 42 U.S.C. § 2000e-5(k).**

Defendants' motion is filed pursuant to Fed. R. Civ. P. 54(d)(2), the authority for which

is based upon 42 U.S.C. § 2000e-5(k).  Doc. Ent. 19-1 ¶¶ 5, 6.  "In the United States, the

prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).  However, "[i]n

any action or proceeding under this subchapter [Equal Employment Opportunities] the court, in

its discretion, may allow the prevailing party, other than the Commission or the United States, a

reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the

United States shall be liable for costs the same as a private person."  42 U.S.C. § 2000e-5(k).

In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S.

412 (1978), the Supreme Court considered "what standard should inform a district court's

discretion in deciding whether to award attorneys' fees to a successful *defendant* in a Title VII

action."  *Christiansburg Garment Co.*, 434 U.S. at 417 (emphasis in original).  The Supreme

Court stated that "a district court may in its discretion award attorney's fees to a prevailing

defendant in a Title VII case upon a finding that the plaintiff's action was frivolous,

unreasonable, or without foundation, even though not brought in subjective bad faith."  *Id*. at

11

421.  A district court should "resist the understandable temptation to engage in *post hoc*

reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have

been unreasonable or without foundation."  *Id*. at 421-422.  The Supreme Court concluded that

"a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his

claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it

clearly became so."  *Id*. at 422.[5]

"The strong policy considerations favoring an award of costs and attorneys' fees to a

victorious plaintiff in a Title VII action do not apply in favor of a victorious defendant. Other

factors to be considered include the good faith of the plaintiff in bringing the action or appeal,

and the ability of the prevailing defendant 'to pay its own way.'"  *Silver v. KCA, Inc.*, 586 F.2d

138, 143 (9th Cir. 1978) (citing *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.

1974)).

**D.      The Court should conclude that, under 54(d)(2)(B), defendants' motion is untimely
as to attorney fees attributable to the trial court but timely as to attorney fees
attributable to the appeal process.**

---

[5]Defendants cite *Equal Employment Opportunity Commission v. Bailey Co., Inc.*, 563
F.2d 439, 456 (6th Cir. 1977) in support of their argument that the Court "need not find that a
plaintiff acted in bad faith.  Rather, the [C]ourt should exercise its discretion in light of all of the
circumstances of the case."  Doc. Ent. 19-1 at 13.
    Although defendants' brief does not designate the page to which it refers, defendants'
apparently refer to the following statement of the *Bailey* Court: "We decline to hold that a
finding of bad faith on the part of the losing plaintiff in a Title VII case is a necessary
prerequisite to awarding attorneys' fees to a prevailing defendant employer."  *Bailey Co., Inc.*,
563 F.2d at 456.  Furthermore, the Court stated: "In applying § 706(k) of Title VII, 42 U.S.C. s
2000e-5(k), when the defendant employer prevails, then, the district court should exercise its
discretion in light of all the circumstances of the case.  The plaintiff's conduct during litigation is
but one factor for the district court to consider."  *Id.*
    *Christiansburg* characterized *Bailey* as submitting that prevailing Title VII defendants
should receive attorney fees absent special circumstances, and *Christiansburg* specifically stated
that such a position was incorrect.  *Christiansburg Garment Co.*, 434 U.S. at 418, n. 12.

12

**a.**       "Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial."  Fed. R. Civ. P. 54(d)(2)(A).  "Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.  If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made."  Fed. R. Civ. P. 54(d)(2)(B).  "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).

            42 U.S.C. § 2000e-5(k) "does not provide a time frame for filing a motion for attorneys' fees.  Therefore, Rule 54(b)(2)(B)'s fourteen-day time period applies to the present motion." *Dillard v. Inalfa Roof Systems*, Case No. 05-CV-72621-DT, 2006 WL 3206079, *2 (E. D. Mich. Nov. 3, 2006) (Cleland, J.) (slip copy).  "Rule 54(d)(2)(B)'s fourteen-day time limit is mandatory, and a late filing is only permitted if the movant requests an enlargement of time within the fourteen-day period or demonstrates excusable neglect under Federal Rule of Civil Procedure 6(b)(2)."  *Dillard*, 2006 WL 3206079, *2 (citing *Allen v. Murph*, 194 F.3d 722, 723-724 (6th Cir. 1999).  *See also Horne v. City of Hamilton*, OH, No. 98-3601, 1999 WL 313902 (6th Cir. May 3, 1999) (district court's award of fees under 42 U.S.C. § 1988 was an abuse of discretion where motion was untimely under Fed. R. Civ. P. 54(d)(2)(B) and there was no reason to excuse the untimeliness).

**b.**       In the instant case, Judge Woods entered judgment for defendants on February 26, 2004.

(Doc. Ent. 13).  Pursuant to Fed. R. Civ. P. 54(d)(2)(B), a motion for attorney fees and expenses should have been filed by March 11, 2004.[6]  The instant motion for attorney fees was filed on June 8, 2005; therefore, it is untimely to the extent it seeks an award of attorney fees related to the district court proceedings.  The Fourth Circuit's unpublished opinion in *Barghout v. Bureau of Kosher Meat and Food Control*, No. 96-2366, 1998 WL 193106 (4th Cir. Apr. 23, 1998), although it concerns a plaintiff's request for attorney fees, is analogous to the case at bar.  In *Barghout*, the district court's judgment was entered on October 10, 1993, the district court's ruling on the post-trial motion was dated June 10, 1994, and the court of appeals' decision affirming the district court's decision was dated October 2, 1995.[7]  Thereafter, in the district court, plaintiff sought attorney fees and costs related to the appellate and district court proceedings.  The district court granted plaintiff's requests.  However, on appeal, the Fourth Circuit stated: "Obviously, Barghout's request for attorneys' fees was not timely insofar as it sought reimbursement for time attributable to proceedings in the district court prior to the initial appeal."  *Barghout*, 1998 WL 193106, *2.  The Court further stated that the district court's order awarding attorney fees could not be construed "as a tacit grant of an extension of time to file the petitions" given Fed. R. Civ. P. 54(d)(2)(B)'s phrase "[u]nless otherwise provided by statute or order of the court[.]"  *Barghout*, 1998 WL 193106, *2.  The Court stated that Fed. R. Civ. P. 6(b) "did not authorize the district court to extend the time to petition for attorneys' fees in the award order[,]" because "[n]o enlargement of time or request therefore was made during the 14-day period following judgment[,]" and "neither Dajani nor the ACLU has taken the position that the

---

[6]The year 2004 was a leap year.

[7]*Barghout v. Bureau of Kosher Meat and Food Control*, 66 F.3d 1337 (4th Cir. 1995).

14

failure to timely file the attorneys' fee requests was attributable to excusable neglect." *Id.* at *2-*3.  The Court then reversed the district court's award to the extent it included the fees attributable to the district court work occurring prior to the initial appeal.  *Id.* at *3.

Additionally, there does not seem to be an explanation for defendants' delay in filing its request for attorney fees attributable to the district court proceedings.  According to plaintiff, "at no time during the District Court proceedings did [d]efendants seek costs or [attorney] fees.  Although Defendants' Brief claims Plaintiff should have dismissed his claims following his deposition in January 2003, Defendants never sought costs or fees until now."  Doc. Ent. 20-1 at 7.[8]  Likewise, defendant "has neither filed a motion for enlargement of time nor proffered a basis for the court to find excusable neglect."  *Dillard*, 2006 WL 3206079, *2.  *See* Doc. Ent. 19-1 at 2-3 ¶¶ 1-7, 13-15.  Furthermore, defendants' June 8, 2005 motion for attorney fees does not argue that a Rule 54(d) exception applies.  *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996) ("A party seeking attorneys' fees must make a timely Rule 54(d)(2)(B) motion unless it falls under a 54(d) exception.").

The conclusion is supported by the Fed. R. Civ. P. 54 Advisory Committee Notes

---

[8]The "Bill of Costs Handbook" of this Court provides: "The taxation clerk will tax costs even if the case is appealed, unless a stay pending appeal has been granted by the court.  However, if all parties prefer to postpone the taxation proceeding until the conclusion of all appellate proceedings, the taxation clerk should be advised in writing.  ***Counsel will be responsible to advise the taxation clerk at the conclusion of all appellate proceedings that costs may be taxed.***"  E. D. Mich. Bill of Costs Handbook at 1 (02/06/07) (emphasis in original).

Although this provision concerns the issue of costs, my conclusion that defendants' motion for attorney fees attributable to the district court proceedings is untimely is buttressed by the fact that, with respect to costs, no post-judgment stay pending appeal was entered, nor does the docket indicate that the clerk was advised to postpone the taxation proceeding until the conclusion of the appeal.

regarding the 1993 Amendments.  "Prompt filing affords an opportunity for the court to resolve

fee disputes shortly after trial, while the services performed are freshly in mind.  It also enables

the court in appropriate circumstances to make its ruling on a fee request in time for any

appellate review of a dispute over fees to proceed at the same time as review on the merits of the

case."  Furthermore, the Fed. R. Civ. P. 54 Advisory Committee Notes regarding the 1993

Amendments provide:  "If an appeal on the merits of the case is taken, the court may rule on the

claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice,

directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.

A notice of appeal does not extend the time for filing a fee claim based on the initial judgment,

but the court under subdivision (d)2)(B) may effectively extend the period by permitting claims

to be filed after resolution of the appeal.  A new period for filing will automatically begin if a

new judgment is entered following a reversal or remand by the appellate court or the granting of

a motion under Rule 59."  Fed. R. Civ. P. 54 Advisory Committee Notes (1993 Amendments).[9]

**c.**      With respect to the appellate proceedings, defendants' motion is timely.  The Sixth

Circuit affirmed the district court's judgment on May 25, 2005.  Pursuant to Fed. R. Civ. P.

54(d)(2)(B), a motion for attorney fees and expenses should have been filed by June 8, 2005 - the

date the instant motion was filed.

---

[9]"[T]he 'timing of a motion for attorney's fees will not by itself support denial where, as
here, the delay in filing is not extreme and there has been no prejudice or unfair surprise to the
adverse party as a result of the delay.'" *Hahn v. City of Kenner*, 1 F.Supp.2d 614, 616 n.1 (E. D.
La. 1998) (citing *Walker v. City of Bogalusa*, No. CIV. A. 96-3470, 1997 WL 666203 *1 (E. D.
La. Oct. 24, 1997)).  Although, as cited above, it appears that in this jurisdiction it is appropriate
to deny a Rule 54 motion for attorney fees on the basis that it is untimely, certainly the delay
here (not filing a request for district court attorney fees until June 8, 2005) prevented plaintiff
from considering defendants' application for fees before filing his March 25, 2004 notice of
appeal.

**E.**   **The Court should deny defendants' motion for an award of appellate attorney fees pursuant to Fed. R. Civ. P. 54(d)(2)(B) and 42 U.S.C. § 2000e-5(k).**

**1.**   The fifty-eight (58) pages of documentation submitted in substantiation of defendants'

motion for attorney fees do not separate the costs which apply to the district court filings and the

appellate filings.  Doc. Ent. 19-8.  Some invoices are for services rendered following plaintiff's

March 25, 2004 notice of appeal.  Doc. Ent. 19-8 at 40-58.  For the sake of argument, it will be

assumed that all charges for attorney fees on these nineteen (19) pages of invoices were

attributable to appellate work.

Plaintiff claims that "[a]t no time during this case, including the appeal process did

Plaintiff act in bad faith."  As to a claim by defendants that plaintiff's appeal was a continuation

of litigation "after it became clear that [the case] was without merit[,]"[10] plaintiff notes that he

"had an absolute right to appeal his case[,]" and "[d]efendants['] personal opinion that the case

had no merit, despite a complete record which illustrates evidence to the contrary, should not be

taken into account."  Plaintiff notes that he is 55 years old and "has been unable to secure work

for approximately three years."  Doc. Ent. 20-1 at 12.  Citing *Bolton v. Murray Envelope Corp.*,

553 F.2d 881 (5th Cir. 1977),[11] plaintiff contends that "[t]o award Sixty-Thousand Dollars to the

Defendant, a profitable corporation would appear contrary to public policy considerations, as the

purpose of 42 U.S.C. § 2000e-5(k) is to ensure that attorneys will undertake representation of

---

[10]Defendants had stated in their motion that "[p]laintiff's insistence on continuing this litigation long after its lack of merit was readily apparent meets th[e] test [under Title VII for awarding defendant attorney fees]." Doc. Ent. 19-1 at 10-11.

[11]"[T]he purpose of section 706(k) is 'to insure that attorneys will undertake representation in this type of case.'" *Bolton v. Murray Envelope Corp.*, 553 F.2d 881, 884 (5th Cir. 1977).

17

plaintiffs in Title VII cases." Doc. Ent. 20-1 at 12-13. Plaintiff cites *Flora v. Moore*, 461 F.

Supp. 1104 (N. D. Miss. 1978),[12] *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911 (11th Cir.

1982),[13] and *Copeland v. Martinez*, 435 F. Supp. 1178 (D.D.C. 1977),[14] to illustrate that "[c]ourts

have awarded attorney fees to a prevailing defendant." Doc. Ent. 20-1 at 13-14. However,

plaintiff maintains, his "conduct in this case, namely filing his complaint, and seeking an appeal

following the Summary Judgment phase in District Court, is in no way similar to the conduct of

the plaintiffs" in *Flora*, *Durrett* and *Copeland*. Doc. Ent. 20-1 at 14.[15]

**2.**     Certainly, an appellate court may award attorney fees pursuant to 42 U.S.C. § 2000e-

5(k). "[S]ection 2000e-5(k) does confer power on an appellate court to allow a reasonable

attorney's fee for appellate work to a prevailing Title VII defendant-appellee." *Bugg v.*

*International Union of Allied Indus. Workers of America, Local 507 AFL-CIO*, 674 F.2d 595,

---

[12]Within its conclusions of law relative to defendants' request for attorney fees and costs, the court stated: "The conduct of this litigation by plaintiffs, which, if its meritlessness was not apparent at the outset, became readily evident after the case failed to receive class certification, was without doubt for months carried on in a vexatious, wanton and oppressive manner." *Flora v. Moore*, 461 F.Supp. 1104, 1121 -1122 (N. D. Miss. 1978).

[13]"The district court erred by declining to assess fees against Durrett, and by testing Beale's (plaintiff's counsel's) liability for fees by the wrong legal standard." *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 913 (11th Cir. 1982). "[N]ot only did Durrett file a groundless complaint, but he also continued to litigate after it became obvious that he had sued the wrong party." *Durrett*, 678 F.2d at 915.

[14]"[T]he Court having found that plaintiff has brought this action in bad faith, with an intent to harass her supervisors and generally vex the defendant through her abusive conduct, and that such action constitutes an intentional abuse of the judicial process by plaintiff, the Court awards defendant his costs of this litigation including reasonable attorneys' fees." *Copeland v. Martinez*, 435 F.Supp. 1178, 1181 (D.D.C. 1977).

[15]In this case, plaintiff has only filed a complaint (Doc. Ent. 1); a witness list (Doc. Ent. 7); a response to defendants' motion for summary judgment (Doc. Ent. 10); a notice of appeal (Doc. Ent. 14); a notice of removal of attorney (Doc. Ent. 16); and a response to the instant motion (Doc. Ent. 20).

18

600 (7th Cir. 1982). "[A]n appellate court may exercise its power to award attorney's fees to a prevailing defendant-appellee only if the plaintiff's appeal is 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Bugg*, 674 F.2d at 600. "Although a district court's determination that the plaintiff's original action was frivolous or meritless may be probative of the efficacy of the appeal, such a determination is neither necessary nor sufficient to support an appellate award." *Bugg*, 674 F.2d at 600 n.10.[16]

It also appears that this Court has jurisdiction to award appellate attorney fees under Section 2000e-5(k). *Richerson v. Jones*, 506 F.Supp. 1259, 1262-1263 (E. D. Pa. 1981) (reviewing plaintiff's entitlement under 42 U.S.C. § 2000e-5(k) to appellate attorney fees);

This is also the Sixth Circuit's position with respect to awards of appellate attorney fees under 42 U.S.C. § 1988. For example, in *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979), the Sixth Circuit discussed "the proper application and interpretation of 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976, which authorizes an award of attorneys' fees to prevailing parties in certain civil rights cases, and sets out standards for the guidance of the district courts in this Circuit to aid them in the exercise of their discretion in the granting of such fees." *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 628 (6th Cir. 1979). The Court stated in part that "[s]ervices relating to

---

[16]*See also Lujan v. State of N. M. Health and Social Services Dept.*, 624 F.2d 968, 971 (10th Cir. 1980) ("we do not consider this an appropriate case in which to award attorneys fees [42 U.S.C. § 2000e-5(k) and Fed. R. App. P. 38] on appeal."); *Donnell v. General Motors Corp.*, 576 F.2d 1292, 1302 (8th Cir. 1978)(pursuant to 42 U.S.C. § 2000e-5(k) awarding "the plaintiff attorney's fees for the appellate portion of this litigation in the sum of $1,000. On remand, the District Court shall consider the question of attorney's fees for proceedings at the trial court level under the guidelines established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), and approved by this Court.").

the various appeals taken in this case are compensable, and the district court, with its greater

facility for evidentiary hearings and fact-finding, should make awards for appellate services in

the first instance, subject to our review." *Northcross*, 611 F.2d at 637 (citing *Weisenberger v.*

*Huecker*, 593 F.2d 49 (6th Cir. 1979)).

Also, the Sixth Circuit has stated, in a civil rights action on review of a district court's

order denying 42 U.S.C. § 1988 appellate attorney fees: "We do not have a witness chair for

hearing evidence, and we are not in a position to conduct an evidentiary hearing where proof is

offered on the question of attorney's fees." *O'Bryan v. Saginaw County, Mich.*, 722 F.2d 313,

314 (6th Cir. 1983). "[I]ssues concerning the award of attorney's fees for the prosecution of an

appeal address themselves in the first instance to the District Court.  The District Court is

required, if necessary, to conduct an evidentiary hearing in order to inform itself of the facts so

that it may rule on the question." *O'Bryan v. Saginaw County, Mich.*, 722 F.2d 313, 314 (6th Cir.

1983).

Furthermore, in a 42 U.S.C. § 1983 action with respect to Federal Rules of Appellate

Procedure 38 and 39 and 42 U.S.C. § 1988, the Sixth Circuit has stated that "the district court is

the forum to which the application for attorney fees ought to be addressed[.]" *Smith v. Detroit*

*Board of Educ.*, 728 F.2d 359, 359 (6th Cir. 1984).  The Court stated:  "it is the district court

which is the appropriate forum for resolving attorney fee requests, where the requesting party is

otherwise entitled[.]" *Smith*, 728 F.2d at 359.  "[I]t is the preferred practice for attorney fee

matters to be addressed by the district court in light of its fact-finding capability." *Smith*, 728

F.2d at 359-360 (citing *Greer v. Holt*, 718 F.2d 206 (6th Cir.1983)).  "'[I]ssues concerning the

award of attorney's fees for the prosecution of an appeal address themselves in the first instance

20

to the district court.  The district court is required, if necessary, to conduct an evidentiary hearing

in order to inform itself of the facts so that it may rule on the question.'"  *Smith*, 728 F.2d at 360

(citing *O'Bryan v. The County of Saginaw, Michigan*, 722 F.2d 313, 314 (6th Cir. 1983).  *See*

*also Lamar Advertising Co. v. Charter Tp. of Van Buren*, 178 Fed. Appx. 498, 502 (6th Cir.

2006) ("The district court is the generally appropriate forum for motions for attorney fees under

§ 1988, even fees on appeal.").

**3.**      Assuming that this Court has jurisdiction to award appellate attorney fees under Section

2000e-5(k), the Court should deny defendants' motion for an award of appellate attorney fees.

In arriving at this recommendation, I have considered the nature of the Sixth Circuit's May 25,

2005 opinion regarding this Court's judgment.  To begin, the Sixth Circuit affirmed this Court's

decision "[b]ecause Plaintiff failed to make out a cognizable claim under either theory [religious

discrimination or retaliatory firing][.]" Doc. Ent. 19-7 at 1.  In concluding that defendants were

entitled to summary judgment on plaintiff's religious discrimination claim, the Sixth Circuit

stated that plaintiff offered "scant evidence" of the comparison between plaintiff and the Jewish

manager of the News' sister paper in Atlanta:

> He can only point to his opinion in his deposition (a total of four or five lines of
> text) that the Jewish editor of the sister paper in Atlanta was treated better despite
> his alleged poorer performance[.] Such scant evidence is not enough to avoid
> summary judgment, because such a brief unsupported opinion does not, by itself,
> establish a prima facie case.

Doc. Ent. 19-7 at 4.  Also, the Sixth Circuit found plaintiff's "other arguments on the religious

discrimination claim . . . similarly unavailing."  It agreed with and adopted the district court's

reasoning.  Doc. Ent. 19-7 at 5.

        As to the retaliation claim, the Sixth Circuit considered plaintiff's "claim that he engaged

21

in protected activity dubious[,]" because he "did not engage in conduct adverse to his

employer[;]" stated that "[p]laintiff did not provide any evidence that Horowitz [the person who

terminated plaintiff] had knowledge of Plaintiff's reluctance to sign the affidavit[;]"

acknowledged that "such knowledge would be a prerequisite to a finding of retaliation[;]" and

recognized that "undisputed evidence indicated that Horowitz's decision to terminate Plaintiff

occurred before Plaintiff's receipt of the proposed affidavit." Doc. Ent. 19-7 at 5-6. The Court

concluded that there was "no error in the district court's conclusions[,]" and affirmed this

Court's judgment. Doc. Ent. 19-7 at 6.

I agree with plaintiff that "in no way did the Court of Appeals' Opinion suggest that

Plaintiff's claims were frivolous, unreasonable or without foundation." Doc. Ent. 20-1 at 8. The

Sixth Circuit's approximately two-page analysis of plaintiff's appeal, while in agreement with

the judgment of this Court, does not suggest that plaintiff's appeal was "frivolous, unreasonable,

or groundless, or that the plaintiff continued to litigate after it clearly became so."

*Christiansburg Garment Co.*, 434 U.S. at 422. Furthermore, as plaintiff notes, Circuit Judge

Moore concurred in the judgment only, "which strongly suggests debatable issues." Doc. Ent.

19-7 at 7; Doc. Ent. 20-1 at 8.

Furthermore, defendants' motion does not convince me that an award of attorney fees is

warranted. According to defendants, plaintiff's appeal contained new arguments and did not

"attempt to address the fatal flaws found by this Court." Doc. Ent. 19-1 ¶ 3. Citing *Guarino v.*

*Brookfield Tp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992),[17] defendants contend that plaintiff's

---

[17]"This Court will not entertain on appeal factual recitations not presented to the district
court any more readily than it will tolerate attempts to enlarge the record itself." *Guarino v.*
*Brookfield Tp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

argument on appeal concerning the comparability of the Atlanta Jewish Times' publisher was a new argument not permitted on appeal. Doc. Ent. 19-1 at 15.[18] The Court would have difficulty assessing defendants claims about the substance of plaintiff's appeal in the absence of a copy of plaintiff's appellate brief.

I acknowledge the Supreme Court's recognition that "many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights[,]" *Christiansburg Garment Co.*, 434 U.S. at 423 n.20, and that "[f]rivolous suits . . . undermine the legitimate efforts of those bringing legitimate suits, and draw scarce judicial resources away from those cases." *Harris v. Group Health Ass'n, Inc.*, 662 F.2d 869, 874 (D. C. Cir. 1981).[19] However, having reviewed the Sixth Circuit's opinion and defendants' motion, I am not convinced of the frivolity of plaintiff's appeal and do not think that an evidentiary hearing on the issue is warranted.[20]

Therefore, defendants' motion should be denied to the extent it is based upon appellate attorney fees. This conclusion is buttressed by the fact that defendants' failure to seek fees

---

[18]Plaintiff's December 1, 2003 response to defendants' summary judgment motion states that "the Jewish News treated similarly situated employees outside Plaintiff's class more favorably, while there simply was no similarly situated employee, there is evidence of religious preference[,]" and mentions the Atlanta sister paper. Doc. Ent. 10 at 15.

[19]*Harris*, 662 F.2d at 870 (in a Title VII case "affirm[ing] the holding of the district court and, in addition, requir[ing] appellant to pay appellee's costs and attorneys' fees incurred during the appeal.").

[20]*O'Bryan*, 722 F.2d at 314 ("In the present case, such an evidentiary hearing should be conducted, since plaintiffs' request contains an abnormal amount of preparation time, especially after completion of a comparatively short brief, and plaintiffs should be required to justify fully this claim.").

within the time specified by Fed. R. Civ. P. 54(d)(2)(B) deprived plaintiff of an opportunity to assess his potential exposure to trial attorney fees before filing his March 25, 2004 notice of appeal.  If defendant had filed its motion for attorney fees attributable to the district court proceedings by March 11, 2004, plaintiff would have known about it before filing his notice of appeal.  As the Sixth Circuit has stated, "the fourteen-day time period within which to file a fee application under Rule 54(d)(2)(b) will necessarily provide the opposing party with notice of the fee application prior to the expiration of the time for appeal."  *Miltimore Sales, Inc. v. International Rectifier, Inc.*, 412 F.3d 685, 690 (6th Cir. 2005).  *See also* Fed. R. Civ. P. 54 Advisory Committee Notes (1993 Amendments) ("One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed.").

## F.    This Court does not have jurisdiction to award Fed. R. App. P. 38 appellate attorney fees.

Defendants' motion for attorney fees is based in part upon Fed. R. App. P. 38 ("Frivolous Appeal–Damages and Costs.").  Doc. Ent. 19-1 at 1.  This rule provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  As defendants point out, "[a]n appeal is frivolous when the appellant's arguments 'essentially had no reasonable expectation of altering the district court's judgment based on law or fact.'"  *Tareco Properties, Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003) (quoting *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir.1999)).  "Sanctions are appropriate where 'the appeal was prosecuted with no reasonable expectation of altering the district court's judgment[.]'" *Allinder v. Inter-City Products Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998) (quoting *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983)).  *See also Wilton*

24

*Corp. v. Ashland Casting Corp.*, 188 F.3d 670, 676 (6th Cir. 1999) (quoting *Allinder* and *Reid*).

This Court does not have jurisdiction to award appellate attorney fees under Fed. R. App. P. 38. Such a request should be posed to the Sixth Circuit. "Under Rule 38 the district court is not empowered to award fees for proceedings before this court[.]" *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1037 (7th Cir. 1988). *See also* 16A FPP § 3984.3 ("Procedure for Awarding Damages") ("Although a remand is permissible if the court of appeals wishes to order it, it is the court of appeals that has power under Rule 38 to award sanctions."). Therefore, the Court should deny defendants' request for an award of appellate attorney fees without prejudice to the request being filed with the Sixth Circuit.

**G.     The Court should deny plaintiff's request for fees related to the response to the instant motion.**

In his response to defendants' bill of costs and defendants' motion for attorney fees, plaintiff seeks an award of fees related to his response to defendants' motion pursuant to Fed. R Civ. P. 54(d). Doc. Ent. 20-1 at 14. In light of the mixed relief recommended above - that defendants are entitled to costs but not to attorney fees - the Court should deny plaintiff's request.

**III.      NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but

25

fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/15/07

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 15, 2007.

s/Eddrey Butts
Case Manager

26